# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ENCAP, LLC,

        Plaintiff,

v.                                                                       Case No. 11-C-685

THE SCOTTS COMPANY, LLC, et al.,

        Defendants.

**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES [110]**

On February 24, 2014, Defendants The Scotts Company, LLC, The Scotts Miracle-Gro Company, LLC, and OMS Investments, Inc. (collectively, "Scotts"), filed a motion to compel Plaintiff Encap, LLC, to produce information and documents in response to Scotts' first set of interrogatories and document requests. Scotts requested that the Court order Encap to provide: (1) supplemental responses to Interrogatories 1–16 of Scotts' First Set of Interrogatories; (2) revised responses to Scotts' First Requests for Production, including a privilege log identifying withheld documents; (3) responsive documents to each of the 71 requests in Scotts' First Requests for Production; and (4) a comprehensive discovery plan, outlining a detailed collection plan and timeline for providing ESI that reflects forensically sound collection principles. Scotts also sought reasonable attorneys' fees incurred in bringing the motion to compel. (Mem. in Support of Mot. to Compel at 16–17, ECF No. 97.)

The Court held a hearing on April 18, 2014, to address the issues raised in Scotts' motion. After hearing argument from all parties, the Court granted in part and denied in part Scotts' motion. The Court ordered Encap to provide to Scotts: (1) supplemental responses to Interrogatories 1, 7,

and 13; (2) a detailed privilege log; (3) a detailed explanation of Encap's ESI and document production protocol; and (4) documents from 2003 or earlier that are responsive to Scotts' requests for document production. Scotts has now filed a motion pursuant to Fed. R. Civ. P. 37(a)(5) seeking $10,710.00 in attorneys' fees incurred in preparing the papers in support of its motion and attending the hearing, as well as $1,361.08 in travel expenses related to the hearing. (ECF No. 110.)

Scotts' motion was granted in part and denied in part, and therefore the governing rule is Fed. R. Civ. P. 37(a)(5)(C), which states that the court "may . . . apportion the reasonable expenses for the motion." Scotts contends that it should receive the full amount because it expended substantial effort to avoid Court involvement. Scotts states that it sent Encap three deficiency letters prior to filing the motion and four additional deficiency letters between February 26 and March 12. Scotts also conducted several meet and confer sessions with Encap. Despite these efforts, Scotts contends that Encap's continued failure to comply with its requests necessitated its motion.

Encap argues that the Court should not award fees and costs because the Court granted only a portion of the relief Scotts had requested. Encap also claims that the issue of Encap's ESI protocol was not properly brought before the Court on February 25 because it had not been the subject of a meet and confer session. Its delay in responding to Scotts' discovery demands was also due, at least in part, Encap argues, to the delay in the parties presenting and the Court entering a protective order to insure that documents containing Encap's trade secret and proprietary information would not be disclosed further than necessary to conduct the litigation. As to most of the interrogatories, Encap contends its responses were sufficient.

Scotts propounded 71 separate document requests to Encap and 16 interrogatories. In response to Scotts' request for production, Encap first listed a set of "General Objections" and then,

subject to those objections, and often after repeating additional objections, Encap either responded that it had no such documents or that the documents would be provided upon entry of a suitable protective order. The record reflects that the parties were attempting to reach agreement on a stipulation concerning a protective order that would allow each to designate documents disclosed as confidential so as to protect confidential proprietary or trade secret information. The Court entered the protective order requested by the parties on February 24, 2014, and Scotts filed its motion to compel the following day. Encap appears to have made a significant effort to produce the documents in its control that were responsive to Scotts' requests almost immediately after the protective order was entered up to the date of the hearing. Its efforts were hampered by the fact that some of the documents requested go back more than ten years and had to be retrieved from Encap's archives and/or third parties. Encap also was hampered by technical problems that prevented it from producing the documents in the form requested by Scott and a shortage of resources at the relatively small firm representing it. Given the number and breadth of the requests for production served by Scotts, the delay in entry of the protective order, and the other problems discussed at the hearing, the Court finds Encap's delay in responding to the requests and completing its privilege log substantially justified.

Much of the focus at the hearing was on Encap's answers to Scotts' first set of interrogatories, particularly Interrogatory No. 13, which asked Encap to identify the trade secrets it alleged Scotts had misappropriated. Dissatisfied with Encap's initial answer, Scotts requested that Encap supplement its answer, which Encap did. Still not satisfied with Encap's response, Scotts requested that the Court compel Encap to supplement its response yet again. Although the Court granted Scotts' request and ordered Encap to supplement its response, it now appears that the real

dispute between the parties was not so much what Encap claimed constituted its misappropriated trade secret(s), but whether what Encap claimed was its trade secret actually constituted a trade secret within the meaning of the law. Encap explained that its trade secret consisted of the compilation of information contained in the Confidential Information Memorandum (CIM) that its agent sent to some twelve different companies in or about 2002 in an effort to interest one of them to partner with Encap in bringing the new products it had invented to market. More than that, Encap explained in its supplemental answer to Interrogatory No. 13 that its CIM described "a go-to-market business plan ('Innovation Strategy') targeted at overcoming (then current) lawn and garden consumers' unmet and misunderstood needs, apathetic horticultural habits." (ECF No. 99 at 7.) The Innovation Strategy, Encap explained, "provided a compilation of information on how to position an emerging family of pioneering technologies and related products in a fashion that is easier to use, while simultaneously increasing the products likelihood of success when used by consumer." (*Id.*) According to Encap, the Innovation Strategy "provided a clear path on how to transform commodity seed-based products into value-added, specialty seed products, while concurrently changing the buying and application habits for related consumers." (*Id. at 8*) As Encap understood its trade secret, it had in fact disclosed it in its entirety by disclosing the CIM and describing its significance for the lawn and garden industry. Scotts' insistence that it had not was, in reality, Scotts' argument that the CIM and related information did not constitute a trade secret as a matter of law.

Having further considered the matter, I conclude that Encap was substantially justified in failing to further supplement its response to Interrogatory No. 13. A motion to compel is not the vehicle for determining whether a party has a valid claim. Moreover, the question of what

4

constitutes a trade secret is not entirely clear. *See, e.g., Centrifugal Acquisition Corp., Inc. v. Moon*, 849 F. Supp. 2d 814, 831 (E.D. Wis. 2012) ("Determining what does and does not constitute a trade secret is considered 'one of the most elusive and difficult concepts in the law to define.'") (quoting *Lear Siegler, Inc. v. Ark–Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir.1978)). Based on the case law the parties have discussed in their respective briefs on the pending motion for summary judgment on Encap's claim for misappropriation of trade secret, I cannot say that Encap's position is frivolous. The mere fact that Scotts believes its response does not constitute a trade secret does not mean that Encap has not fully responded to the interrogatory.

Interrogatory No. 1 asked Encap to explain in detail the basis for its allegations of infringement on a claim by claim basis "including whether Encap contends that Scotts' activities constitute direct infringement, induced infringement, contributory infringement, and/or willful infringement, and, if Encap alleges that any element of an asserted claim is present under the doctrine of equivalents, the basis for each and every such allegation." (ECF No. 98 at 7.) After reciting its boilerplate, nonspecific objections, Encap responded that it had already provided Scotts its infringement contentions as of January 6, 2014, and that it contended that Scotts' activities constituted "direct infringement, induced infringement and/or contributory infringement," and that Scotts activities constituted willful infringement. (*Id.*) At the hearing on its motion to compel, Scotts complained that it was not clear from Encap's infringement contentions "whether they're asserting that Scotts does those steps directly, whether it's only asserting that Scotts encourages [others] to do those steps, whether it's asserting that Scotts makes products that are components of other products that people are then using to infringe those claims." (ECF No. 147 at 46.) But that was not what Scotts asked for in its January 28, 2014 deficiency letter. There, Scotts only

5

complained that Encap's boilerplate objections to Interrogatories 1, 6, 10, and 12 were not well taken. (ECF No. 97-5 at 4.) It was not until the hearing that Scotts was specific as to what information was missing. Under these circumstances, I do not find Encap's failure to supplement Interrogatory No. 1 earlier to be without substantial basis.

Finally, Interrogatory No. 7 asked Encap to "Identify and describe any communications, either written or oral, that allege or discuss infringement of any of the Patents-In-Suit, or question the validity or enforceability of any of the Patents-In-Suit, including any domestic or foreign litigation or administrative proceedings to which Encap has been a party that relates to the subject matter of any of the Patents-In-Suit." (ECF No. 98 at 12.) Encap responded with its nonspecific boilerplate objections and then, subject to those objections, stated that any such communications were privileged communications with its attorneys. (*Id.*) Scotts' deficiency letter again complained only of the boilerplate objections, not the substance of the answer, and at the hearing, Encap confirmed through counsel that its only communications concerning the validity of the patents at issue were with its attorneys. Here, too, I do not find Encap's failure to supplement unjustified.

The balance of the hearing was devoted to a discussion of Encap's failure to identify in detail the ESI protocol it intended to use. As Encap argued, it appears that its ESI protocol was not the subject of a proper meet and confer session. Based on Attorney David Kelly's summary e-mail following a February 24 meet and confer, it appears that the parties had only begun to discuss the relevance of specific search terms and that Encap had not yet forwarded its list of search terms to Scotts. (Ex. I at 2, ECF No. 97-9.) Thus, the particular search terms identified by Scotts in its reply brief had not been discussed prior to February 25. Although the issue was aired and addressed by

the Court at the April 18 hearing, I do not find the dispute over this issue warrants the award of fees requested.

In sum, having carefully considered the dispute between the parties, I conclude that an award of actual attorneys fees and costs is not called for at this time. Encap is cautioned about its use of nonspecific boilerplate objections. Rule 33(b)(4) states that "grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). It is not enough to simply state that an interrogatory is "vague, ambiguous, overly broad, unduly burdensome, and seeks information that is not relevant to the issues in this case nor reasonably calculated to lead to the discovery of admissible evidence." (ECF No. 98 at 12.) For such an objection to be effective, it must be supported by an explanation as to why the interrogatory is improper. *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260, 264 (D. C. Ill. 1979); *see also White v. Beloginis*, 53 F.R.D. 480, 481 (S.D.N.Y. 1971) (holding that general objections may result in waiver of the objections). But Encap proceeded to answer the interrogatories, notwithstanding its objections, and while its answers were not complete, I conclude that the deficiencies noted at the hearing do not warrant an award of fees. Accordingly, Scotts' motion is denied.

**SO ORDERED** this __14th__ day of August, 2014.

    s/ William C. Griesbach  
    William C. Griesbach, Chief Judge  
    United States District Court