UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ENCAP, LLC,

        Plaintiff,

v.                               Case No. 11-C-685

THE SCOTTS COMPANY, LLC, et al.,

        Defendants.

**DECISION AND ORDER DENYING RECONSIDERATION**

Plaintiff Encap, LLC, seeks reconsideration of my Claim Construction Order construing several terms in two of the patents at issue in the case. Encap contends that I made several errors of fact and law in construing the term "Indicator" in the 7,412,878 (the '878 patent). Encap contends that I similarly erred in construing the two separate phrases in the 8,474,183 (the '183 patent).

Defendant The Scotts Company, LLC, contends that Encap is merely seeking a "do-over" and has failed to establish either newly discovered evidence or a manifest error of law that Fed. R. Civ. P. 59(e) requires in order to grant such relief. Scotts also argues that reconsideration is not warranted in any event on the merits.

It should be noted at the outset that Fed. R. Civ. P. 59(e) is not applicable here since no final judgment has been entered. Non-final decisions by the court "may be revised at any time before the entry of a final judgment adjudicating all claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). This is not to say that any court welcomes repeated requests to revisit earlier rulings, but where it appears that the court has clearly erred and immediate correction will save time and expense in the long run, it is not unreasonable to request such relief from the court. In this case, although the

court did make several errors in its Decision on Claim Construction, none of them affected the construction of the disputed terms and phrases at issue and accordingly the motion for reconsideration will be denied.

**A. The '878 Patent**

Turning first to the '878 patent, Encap argues that the court erred in construing the term "Indicator" as used in claims 1, 2 and 4. The court construed Indicator to mean "a material that has the ability to repeatedly increase and decrease in relative size as it absorbs and releases water, respectively." Encap argues that the court's erroneous construction rests on several factual and legal errors. First, Encap notes that the court factually erred in adopting the false premise that the '878 patent had only two claims, whereas it actually has four. This led to the legal error that the court's construction read a limitation of claim 3 into claim 1, rendering claims 2 and 3 superfluous. Encap contends that by doing so the court violated the principle that claim constructions should not render claim terms superfluous. (Pl. Br. in Supp. of Mot. for Recons., ECF No. 144 at 5.)

This error was compounded, Encap claims, by the court's reliance on the dissenting opinion in *Aventis Pharmaceuticals Inc. v. Amino Chemicals Ltd.,* for the proposition that the same claim terms are generally given the same construction. 715 F.3d 1363, 1380 (Fed. Cir. 2013). The majority opinion in *Aventis* rested on the corollary that the same claim term can have different constructions depending upon the context of how the term is used within the claims and specification.

Encap is correct that I made the erroneous statement that the '878 patent had only two claims instead of four. Encap is also correct that I inadvertently cited a dissent for the principle that generally the same claim term is given the same meaning throughout the patent. Neither error, however, impacted my construction of the term "Indicators." In fact, Encap seems to agree with my construction.

2

It states: "there appears to be no dispute as to what the 'Indicator' **is** – it is a moisture absorbing/releasing and size/shape changing material . . . ." (ECF No. 144 at 8.) It is what the "Indicator" does that is disputed, Encap argues, and then it makes the confusing statement that "by focusing on what the 'Indicator' does, error was injected in the Decision on Claim Construction's construction." (*Id.* at 9.)

But in construing claim terms, the court's focus is on saying what the terms mean, not what they do. The court was asked to construe the term "Indicators" that appears in claims 1, 2 and 4, in other words, to say what Indicators, as used in the patent, are. Encap uses the capitalized form of the word in all three claims and throughout the specification, strongly suggesting it has a specific meaning. Indeed, the Summary of the Invention states:

> The present invention relates to the use of water absorbing/*releasing* materials (Indicators) to serve as the visual indicators for people to know when they are to start and stop watering their lawn. It is an object of the present invention for the Indicator to, when dry, to be of a small relative size when applied on and/or near seed and/or plant life. It is an object of the present invention for the applied Indicator to swell and increase in size to a distinctively larger relative size (serving as the Indicator) when the soil, seed, and/or plant life are watered to desired levels. *It is an object of the present invention for the process to be repeatable and predictable.*

(2:17–27) (emphasis added). Encap argues that the court should have simply construed the term "Indicator" as a sign and allow the rest of the claim language to address what it signifies. But as the above quoted section makes clear, Encap offered a specific definition of the term in the specification and described how it works. Indicators, as used in the patent, are not generic signs; they are "water absorbing/*releasing* materials" that increase and decrease in size to tell people when to start and stop

3

watering their lawn. The court's construction does not improperly import limitations from the specification into the claims; instead, it provides Encap's own definition consistent with the use of the term in all three claims in which it appears.

Nor does the court's construction violate the principle of claim differentiation. Claims 1 and 2 describe different methods: one for determining when to stop watering, and the other for determining when to start watering. Claim 3 describes the process as repeating. Encap has distinguished the different methods for which its Indicators are used in the first three claims, and the court's construction of the term does not destroy the difference between those three methods. And claim 4 adds as a limitation the application of the Indicator along with grass seed.

In sum, notwithstanding the court's inadvertent statement that the '878 patent had only two claims and its citation to a dissent for an undisputed general principle of law, the construction of the term Indicators as "a material that has the ability to repeatedly increase and decrease in relative size as it absorbs and releases water, respectively" will stand. The court is not convinced that its original decision was in error.

**B. '183 Patent**

As to the '183 patent, Encap contends that the court erred in construing the phase in claim 8 that reads: "said color coming from a pigment and/or dye in said mulch product." The court construed the language to mean: "the color comes from a pigment and/or dye that has been added to the mulch product." The court also construed the phrase "changing color intensity of said mulch product" to mean "causing a chemical reaction that imparts a change in color intensity to the mulch product." The primary dispute is over the limitation requiring that the dye or pigment be added to the mulch, thereby excluding mulch that by itself naturally changes color when wet. Encap again contends that the court's

4

constructions result from both factual and legal error. In Encap's view, the court misread the specification to find a clear disclaimer in the specification where none exists and then misread the prosecution history to find a disclaimer that had since been disavowed.

I agree with Encap that the specification lacks a clear disclaimer of the kind of inherent or natural pigment of mulch that Encap claims is covered by claim 8. It was error to say otherwise. I remain convinced, however, that the specification and prosecution history, read in their entirety, make clear that only colorant that is added to the mulch is included.

A clear disclaimer of the inherent pigment of the mulch is not required to support the court's construction. "When the specification 'makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.'" *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347 (Fed. Cir. 2004) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed.Cir. 2001)). Claims must be read in view of the specification, of which they are a part. The specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (internal quotations omitted).

It is certainly true, as Encap notes, that "[w]hen consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Abbott Laboratories v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). In other words, when the specification describes a single embodiment to enable the invention, the court may not limit broader claim language to that single application unless the patentee has demonstrated a clear

5

intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction. *Id.* On the other hand, the claims cannot "enlarge what is patented beyond what the inventor has described as the invention." *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed.Cir. 2003). And where the patent describes the features of "the present invention" as a whole, this description limits the scope of the invention. *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318–19 (Fed. Cir. 2006); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("[T]he characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure.").

Here, the specification of the '183 patent strongly supports the conclusion that the pigment or dye is something that is added to the mulch and is not an inherent property. If it was not, then all or almost all mulches would be covered, since all or almost all mulches have a natural color that changes (usually darkens) when wet. This common sense understanding is supported by the repeated references in the specification recited in the court's original decision to the "the present invention." We are told that "[t]he present invention relates to horticultural products and a method for making gardening products which have a dye or fragrance added to the products." ('183 patent, col. 1:15-17.) In the detailed description of the invention we read: "The present invention uses a wide range of colorants for coloring the gardening product. Both liquid dyes and dry pigments can be used. (6:48-50.) Claim 8 repeatedly refers to the "color intensity of said mulch product." The only time the phrase "color intensity" appears in the specification, we are told that "Color is not a limiting factor. All pigments and shades tested with the present invention colored the mulch product. Color intensity increased with an increase in colorant." (6:48-59.) Implicit in this explanation of the invention is the requirement that

6

the colorant be added to the mulch. On the other hand, no where in the specification is there any reference or suggestion that mulch without an added colorant would be included. Read in the context of the specification, the only reasonable construction is that the colorant is added to the mulch.

As I noted in my original decision, this construction is supported by the prosecution history. Here, it is important to keep in mind the length of that history. The '183 patent grew out of an application that was originally filed on January 25, 2001, which was itself a continuation in part of an application filed on July 10, 1998. It was finally issued on July 2, 2013. As I noted in my original decision, from January 2001 to December 8, 2011, Encap had been pursuing, but ultimately cancelled, similar product claims under the same application. In December 2002, Encap filed a response to an office action rejecting several claims relating to a colored mulch product "wherein the dye indicates to the user the environmental condition of the soil where the mulch is placed." (Decl. of Douglas C. Dreier, Esq., Ex. 31, ECF No. 112-31 at 13.) Distinguishing the prior art cited by the Examiner in rejecting the claims, Encap stated, "Kananen does not add a dye or pigment to the compost." (*Id.* at 14.) Likewise, in a March 15, 2004 response to an office action rejecting other claims, Encap distinguished prior art cited by the Examiner with the statement: "Edwards teaches against using mulch and does not teach adding a dye to a mulch which would indicate to a user environmental conditions." (*Id.*, ECF No. 112-32 at 11.) I concluded that these and similar statements in the prosecution history constituted disclaimers of the "inherent pigment" construction it was seeking for claim 8.

Encap contends that the court erred in focusing on the early prosecution history relating to the product claims instead of its more recent efforts in connection with its method claims. It notes that the prosecution history must be read in its entirety, rather than focusing on snippets lifted out of context. Encap then points to its effort beginning in 2011, shortly after it commenced this action against Scotts,

7

to broaden its claim to recapture the previously surrendered territory of natural or inherent and non-added pigment. It is likely more than coincidence that Scotts' accused product falls within that territory.

Encap's effort to expand the scope of its patent is most clearly evident in its addition of dependent claim 9, which reads "The method of claim 8 wherein said pigment and/or dye is added to said mulch product." The addition of this dependent claim, absent the prosecution history, would support Encap's argument that claim 8 did cover natural mulches without added colorant. Under the principle of claim differentiation, "an independent claim should not be construed as requiring a limitation added by a dependent claim." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). But as I noted in my original decision, the principle of claim differentiation is a rule of thumb or a presumption that can be overcome by a contrary construction dictated by the written description or prosecution history." *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). I concluded the presumption has been overcome here.

In the PTO, Encap's effort to expand its patent was initially rejected by the Examiner as obvious in a July 12, 2012 office action:

> The examiner and applicant discussed the new claims filed with the RCE amendment. The examiner indicated that it is her determination that the claims do not patentably distinguish over the prior art of record because the concept in the claims is inherent and old and notoriously well-known. It is known to water seeds and plants when the surrounding area looks dry and many materials. e.g. clay, inherently exhibit color change intensities when they get wet. The examiner has no further recommendations to applicant concerning the claim language and suggested that applicant may want to consider filing an appeal brief in response to the coming office action.

(Dkt. 114-7). Encap notes that the Examiner's explanation clearly shows she understood that Encap was claiming not just mulches to which a colorant was added but also mulches without added colorant. Moreover, in response to this rejection, Encap notes that it did not limit its claim but instead convinced

8

the Examiner, based on videos and advertisements for Scotts' EZ Seed product that uses a natural mulch without added color for the same purpose, that the invention claimed was not obvious. Encap notes that the Notice of Allowance followed shortly thereafter. Thus, Encap contends, the entire prosecution history supports its broader reading of claim 8.

The problem with Encap's argument, however, is that it ignores the clear teaching of *Hakim v. Cannon Avent Grp., PLC* that in order to rescind a previous disclaimer, the patentee must have clearly disavowed the previous disclaimer. 479 F.3d 1313, 1317 (Fed. Cir. 2007). Moreover, in order to rescind a disclaimer made during prosecution and thereby recapture the disclaimed scope, "the prosecution history must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Id; see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed.Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement."). Here, there is no indication in the prosecution history that the Examiner realized that Encap had previously disclaimed the very scope it now sought to regain in order to avoid Kananen and Edwards. I therefore reject Encap's effort to expand the scope of claim 8 to include mulches without added colorant.

In a motion to supplement the record, Encap has offered evidence that the Examiner has reviewed the court's decision and disagrees with my conclusions. Having invited the Examiner to offer her opinion in the context of an office interview on an application for a continuation of the '183 patent, Encap has offered the Examiner as a kind of expert witness in support of its construction of the claim

9

language. Encap's motion to supplement the record is opposed by Scotts and is also the subject of Scotts' motion for sanctions against Encap's counsel for violating the patent prosecution bar provision of the parties' stipulated protective order. But even considering the Examiner's opinion, my conclusion does not change. Encap is seeking to regain territory it expressly disavowed without making any effort to explain why the earlier rejections of its claim should not be resurrected as well. There is nothing in the supplemental materials Encap has offered that shows that the Examiner is intimately aware of the entire twelve-year history of the '183 patent, nor does she address the earlier disclaimers noted above. Under these circumstances, her opinion is not persuasive, whether it's properly before me or not.

Encap makes essentially the same argument with respect to the court's construction of the phrase "changing color intensity of said product." Here, too, based on express disclaimers in the prosecution history, the court construed this language to mean "causing a chemical reaction that imparts a change in color intensity to the mulch product." I reject Encap's argument that this construction is erroneous for the same reasons set forth above. Nowhere did Encap invite the Examiner to revisit the prior art that the previous disclaimer was made to avoid, and there is no showing that she ever did so.

For all of these reasons, and for the reasons set forth in the Decision and Order on Claim Construction, Encap's motion for reconsideration is denied.

**SO ORDERED** this 14th day of November, 2014.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court